IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM MCRAE                              )
                                           )
                  Plaintiff,               )
                                           )
        v.                                 )        Civil Action No. 1:20-318
                                           )
SGT. K. PIERSON, HEARING                   )
EXAMINER R. SZELEWSKI, and                 )
SUPERINTENDENT MICHAEL                     )
CLARK                                      )
                                           )
                  Defendants.              )

**MEMORANDUM OPINION**

Pro se Plaintiff William McRae ("McRae"), who is an inmate at the State Correctional

Institution at Albion ("SCI Albion"), commenced this action under 42 U.S.C. § 1983 for alleged

violations of his constitutional rights with respect to a disciplinary proceeding. (ECF No. 6

("Compl.").) In his Complaint, McRae names three SCI Albion personnel as Defendants—i.e.,

Sgt. K. Pierson ("Sgt. Pierson"), Hearing Examiner R. Szelewski ("HE Szelewski"), and

Superintendent Michael Clark ("Superintendent Clark").

Defendants have moved the Court to dismiss the Complaint under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a cognizable claim for relief. (ECF No. 15.) For the reasons

that follow, their motion will be granted.[1]

---

[1] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge to
conduct all proceedings in this case, including the entry of final judgment, as authorized by 28
U.S.C. § 636. (ECF Nos. 2, 14.) Subsequently, McRae filed a second consent form indicating that
he wants a District Judge to hear this case. (ECF No. 19.) While "[t]he court may . . . under
extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate
judge[,]" 28 U.S.C. § 636 (c)(4), McRae's second consent form appears to have been filed in error
as it is a copy of the form filed by Defendants consenting to jurisdiction of a Magistrate Judge.
Even if it was not an erroneous filing and McRae intended to request the Court to vacate the

## I.     Factual Background

According to the Complaint, on November 15, 2018, Defendant Sgt. Pierson issued a "fictitious" misconduct report alleging that McRae had threatened him. (Compl. at 4.) McRae acknowledges that a verbal altercation had transpired between the two on that day but asserts that Sgt. Pierson was the "actual aggressor" as he made multiple discriminatory and sexual comments in an attempt to assert his authority over McRae. Specifically, Sgt. Pierson allegedly called McRae "a monkey" and told him that "when I tell you to do something, you fucking do it," and that "I will make you strip like a whore and bend over. If I tell you to grab your ankles and give me a blow job[,] that's what you'll do." (*Id.*)

McRae claims that Sgt. Pierson then "sexually harassed and assaulted" him by "aggressively grop[ing] and fe[eling] [him] up" against the wall while "continuing his verbal racial, sexual words and discriminatory slurs and remarks." (*Id.*) McRae alleges that Sgt. Pierson's stated justification for searching him was that he "had a wack on his persons," but it turned out that McRae only possessed a commissary approved brush. (*Id.*)

McRae maintains that throughout this incident Sgt. Pierson never reported that he was in fear for his life, felt endangered, or was ever threatened by McRae in anyway. (*Id.*) Nor did Sgt. Pierson make any "distress or panic" incident call at the time. (*Id.*) Yet, he "fabricated" the misconduct report and claimed that McRae had threatened him by taking a "constant aggressive stance" during the incident. (*Id.*)

Three days later, Defendant HE Szelewski held a disciplinary hearing at which McRae submitted a document with his version of the incident along with a request that another officer who had witnessed the altercation be called to testify. (*Id.*) McRae also requested HE Szelewski

consensual referral via the second consent form, he has not identified any extraordinary circumstances that justify doing so.

to review the video footage from various security cameras to ascertain what had actually occurred. (*Id.*) But HE Szelewski allegedly reviewed video footage from only one of the five cameras that McRae had identified and refused to call McRae's requested witness. (*Id.* at 4–5.) Ultimately, HE Szelewski found McRae guilty of the charged misconduct and sanctioned him to thirty days in disciplinary custody. (*Id.* at 5.)

On appeal, the Program Review Committee at SCI Albion upheld HE Szelewski's decision. (*Id.* at 5–6.) McRae then filed a second level appeal to Defendant Superintendent Clark who denied the appeal and "continued the conspiracy by refusing to review any evidence or [lack thereof] that would have exonerated [McRae] of all charges." (*Id.* at 5–6.) However, McRae's final appeal was granted by the Office of the Chief Hearing Examiner who noted that:

> The procedures employed were contrary to law, department directives, or regulations. The punishment [was] disproportionate to the offense and/or the findings of fact were insufficient to support the decision of guilt determined by [HE Szelewski] because he failed to provide detailed evidence to support his finding of guilt.

(*Id.* at 6.)

As a result, McRae's misconduct charge was remanded with instructions to either be re-heard by HE Szelewski and permit the calling of witnesses and testimony or be dismissed with or without prejudice. (*Id.*) Although McRae alleges that he was subsequently served two misconduct reports bearing the same tracking number as the initial misconduct, it is unclear from the allegations of the Complaint as to whether HE Szelewski held a second hearing. (*Id.*) But in his response to the pending motion, McRae asserts that upon remand the misconduct charge was not re-heard because he had already served the thirty days in disciplinary custody.[2] (ECF No. 23 at 1, 2.)

---

[2] Plaintiff's briefing may be used "to clarify allegations in [his] complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (citing C. Wright & A. Miller,

McRae claims that due to the time served in disciplinary custody he "lost his job, monthly pay, visitation and other institutional privileges; which should have resulted in the misconduct being withdrawn from [his] institutional file, and [him] being compensated." (*Id.* at 1.) According to McRae, the remand "in no way benefited [him]" because he was not monetarily compensated for those losses. (*Id.* at 3.)

This lawsuit followed in which McRae seeks monetary damages for the thirty days he spent in disciplinary custody. (Compl. at 3.)

## II.    Procedural History

McRae initiated this lawsuit by filing a motion to proceed *in forma pauperis* which was granted on November 19, 2020, and the Complaint was docketed on November 23, 2020. (ECF Nos. 4, 6.) Defendants then filed the pending motion to dismiss with an accompanying brief to which McRae has responded. (ECF Nos. 15, 16, 23). Accordingly, the matter is ripe for consideration.

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224,

---

Federal Practice and Procedure § 1364, pp. 480–481 (1990); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 428, n.8 (3d Cir. 1999); *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 911 (D.C. Cir. 1997); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992)). Accordingly, the Court finds it appropriate to augment the facts alleged in the Complaint with "concessions in [McRae's] response to the motion to dismiss." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012).

233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"[P]ro se litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). Therefore, courts must "remain flexible, especially 'when

5

dealing with imprisoned pro se litigants[,]' . . . . [a]nd . . . 'apply the relevant legal principle even

when the complaint has failed to name it.'" *Vogt v. Wetzel*, No. 18-2622, 2021 WL 3482913, at *2

(3d Cir. Aug. 9, 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir.

2013)). Notwithstanding this liberality, "pro se litigants still must allege sufficient facts in their

complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). Nor can they "flout procedural

rules—they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704

F.3d at 245).

## IV.    Discussion

Section 1983 provides a private citizen with the right to bring an action against any person

who under color of state law deprives him of a right or privilege secured by the Constitution of the

United States. 42 U.S.C. § 1983. This statute does not create substantive rights but instead

"provides only remedies for deprivations of rights established elsewhere in the Constitution or

federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Therefore, a § 1983 plaintiff

"must establish that []he was deprived of a federal constitutional or statutory right by a state actor."

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). "The first step in any such claim is to identify the

specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).[3]

When the Complaint is liberally construed, McRae appears to be asserting that Sgt. Pierson

violated his Eighth Amendment right to be free from cruel and unusual punishment by sexually

assaulting him during a search of his persons and by subjecting him to comments that constituted

sexual harassment. McRae also claims that his Fourteenth Amendment due process rights were

violated because HE Szelewski rendered a decision against him without reviewing all available

---

[3] Because Defendants do not dispute that they acted under color of state law, the Court's analysis
focuses on whether they deprived McRae of his constitutional rights.

evidence and Superintendent Clark denied his appeal challenging that decision. The Court will discuss each claim, in turn.[4]

### A. *Eighth Amendment*

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). While the Third Circuit has recognized that "sexual abuse of inmates by prison officials offends the Eighth Amendment[,]" *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018), it is well established that "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 475 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Therefore, to assess whether such conduct rises to the level of a constitutional violation, the Third Circuit has adopted a framework with both objective and subjective components—i.e., "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind." *Id.*

---

[4] While McRae also references the First, Fourth, and Fifth Amendments in his Complaint, he has not connected them to his factual allegations. For example, McRae has not alleged that (1) he engaged in constitutionally protected conduct, (2) adverse action was taken by Defendants sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link exists between the two, as is required to sustain a First Amendment retaliation claim. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016). And although the Fourth Amendment assures the right against unreasonable searches and seizures, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984). Put another way, if McRae is premising a Fourth Amendment violation on the fact that Sgt. Pierson's searched him, the law is clear that "prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells . . . ." *Id.* at 530. Finally, the Fifth Amendment is not implicated in this case because Defendants are state actors, whereas "[t]he limitations of the fifth amendment restrict only federal governmental action . . . ." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

Under this framework, even "a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." *Id.* at 477. But because "the Eighth Amendment shields inmates from only those actions 'repugnant to the conscience of mankind[,]'" *id.* at 475 (quoting *Hudson*, 503 U.S. at 10), the objective component is necessarily "contextual and responsive to contemporary standards of decency." *Id.* at 476 (quoting *Hudson*, 503 U.S. at 8). Accordingly, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In this regard, the Third Circuit has elaborated that, while not exhaustive, examples of "objectively serious sexual contact . . . include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* at 478.

Here, McRae allegations fall short of satisfying the objective component of the underlying inquiry. He alleges that Sgt Pierson sexually assaulted him during a body search. Because his claim rests upon a single incident of alleged abuse, McRae must demonstrate that his contact with Sgt Pierson was so severe or serious as to be repugnant to the conscience of mankind. But he has only alleged that Sgt. Pierson aggressively groped him and felt him up against the wall during the search. And such allegations are not severe enough to sustain an Eighth Amendment violation. *See, e.g.*, *Ricks*, 891 F.3d at 479 (suggesting that an isolated, momentary incident in which guard rubbed his erect penis against plaintiff's buttocks through both men's clothing was not sufficiently severe, but allowing opportunity to amend); *Watson v. Wingard*, 782 Fed. Appx. 214, 216 (3d Cir. 2019) (affirming that defendant was entitled to summary judgment on an Eighth Amendment claim where plaintiff alleged that during a pat-down search, defendant gave him an upper cut to his groin and subsequently massaged and groped his penis and buttocks); *McIntyre v. Kellinger*, 741 Fed.

8

Appx. 891, 892 (3d Cir. 2018) (holding that incident in which defendant dragged his hands down plaintiff's buttocks, gripped his buttocks, patted his thighs, and squeezed his ass as if he was a woman while whispering in a sexual manner during a pat-down search was not objectively severe or serious to establish an Eighth Amendment violation).

McRae also alleges that Sgt. Pierson sexually harassed him by subjecting him to certain comments before and during the search. But those comments, while vulgar and abrasive, do not rise to the level of a constitutional violation either. This is so because "[v]erbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." *Colon v. Anglikowski*, No. 1:20-CV-00036, 2021 WL 2875477, at *5 (W.D. Pa. July 8, 2021) (quoting *McCain v. Williams*, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018)).

In sum, McRae has failed to allege a plausible Eighth Amendment claim against Sgt. Pierson because the conduct alleged is not objectively severe or serious to rise to the level of a constitutional violation.

### B.      Fourteenth Amendment

To establish a due process violation in the prison context, a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or a statute. *Sandin v. Conner*, 515 U.S. 472, 479 n.4, 483–84 (1995). A prisoner's liberty interests are not violated, however, unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Therefore, in determining whether a prisoner's due process rights have been violated, courts first consider whether there has been a denial of a liberty or property interest. *See Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). If a prisoner

makes such a showing, the next step for the courts is to evaluate "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.*

Here, McRae claims that his due process rights were violated because HE Szelewski rendered a decision against him at the disciplinary hearing without reviewing all available evidence. But this claim fails at the first step of the inquiry outlined above because McRae alleges that, after finding him guilty of the charged misconduct, HE Szelewski sanctioned him to thirty days in disciplinary custody. And thirty days in disciplinary custody, without more, is insufficient to establish the kind of atypical deprivation of prison life necessary to implicate a protected liberty interest. *See Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002) (seven months in disciplinary custody insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706–08 (3d Cir. 1997) (fifteen-month placement in administrative custody did not implicate a protected liberty interest because said confinement was not atypical); *Young v. Beard*, 227 Fed. Appx. 138 (3d Cir. 2007) (aggregate 980 days in disciplinary segregation did not violate the due process clause).

Although McRae asserts that due to the thirty days he served in disciplinary custody he lost his job, monthly pay, and visitation and other institutional privileges, but he does not claim, and could not plausibly claim, that these hardships are either atypical or significant. Because McRae had no protected liberty interest in the outcome of his disciplinary hearing, his due process claim against HE Szelewski is untenable.

McRae also claims that Superintendent Clark violated his due process rights by denying his appeal in which he had challenged HE Szelewski's decision. In addition to having no protected liberty interest in the outcome of his disciplinary hearing, McRae's claim against Superintendent Clark fails for two additional reasons. First, it is well established that inmates do not have a

constitutional right to a prison grievance system. *Simonton v. Tennis*, 437 Fed. Appx. 60, 62 (3d

Cir. 2011) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38

(1977); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001)).

Second, under § 1983, a defendant must be shown to have had personal involvement in the

alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *See*

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). And participation

in an after-the-fact review of a grievance or appeal is insufficient to establish personal involvement

on the part of those individuals reviewing grievances. *See id.* at 1208 (finding the filing of a

grievance is not enough to show the actual knowledge necessary for personal involvement); *Brooks*

*v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that

prison officials and administrators responded inappropriately, or failed to respond to a prison

grievance, did not establish that the officials and administrators were involved in the underlying

allegedly unconstitutional conduct).

Accordingly, McRae has failed to allege a plausible Fourteenth Amendment due process

claim against either HE Szelewski or Superintendent Clark.[5]

### C.    *Leave to Amend*

When dismissing a civil rights case for failure to state a claim, a court must give the plaintiff

the opportunity to amend a deficient complaint unless doing so would be inequitable or futile.

---

[5] In his Complaint, McRae also alleges, albeit in a conclusory fashion, that Superintendent Clark
continued the conspiracy against him by denying his appeal. But to plead a conspiracy claim
properly, a plaintiff must allege "facts that plausibly suggest a meeting of the minds." *Great W.*
*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010). McRae has not
done so. And even if he had made the allegations of conspiracy with the requisite specificity,
McRae's failure to plausibly allege a deprivation of his constitutional rights is fatal to his
conspiracy claim. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) ("To
prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color
of state law reached an understanding to deprive him of his constitutional rights.").

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted).

Here, allowing McRae to file another complaint would be futile. As discussed above, Sgt. Pierson's conduct does not rise to the level of an Eighth Amendment violation and further amendment cannot alter this outcome. McRae described the conduct of Sgt. Pierson upon which he based his Eighth Amendment claim with a degree of factual detail that makes clear that the single alleged incident of inappropriate "grop[ing] and fe[eling] [him] up" does not violate the Eighth Amendment. Given the existing factual detail alleged in support of this claim, any amendment would be futile unless McRae were to fundamentally deviate from his current factual allegations, which would be inequitable. Additionally, the factual basis for McRae's Fourteenth Amendment due process claim, which relates to his disciplinary custody in a prison, is insufficient to implicate a protected liberty interest and cannot be cured. Finally, because inmates do not have a constitutional right to a prison grievance system, any attempt to replead the claim related to McRae's appeal to Superintendent Clark would also be futile.

**V.    Conclusion**

Based on the foregoing, Defendants' motion to dismiss will be granted. An appropriate order will follow.

Dated: August 24, 2021

RICHARD A. LANZILLO
United States Magistrate Judge